IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TOTAL WALL, INC.,

                       Plaintiff,                      OPINION AND ORDER

     v.

                                                         09-cv-404-wmc

WALL SOLUTIONS SUPPLY, LLC,

                       Defendant.

---

This is a civil action in which plaintiff Total Wall, Inc. alleges that defendant Wall Solutions Supply, LLC breached their distributorship agreement by failing to pay multiple invoices. Wall Solutions has filed counterclaims against Total Wall alleging that Total Wall has breached an exclusivity clause in the agreement, been unjustly enriched and violated the South Carolina Unfair Trade Practices Act. Because the parties are citizens of different states and Total Wall is seeking more than $75,000, this case falls within the court's diversity jurisdiction. 28 U.S.C. § 1332. Total Wall now moves for partial summary judgment on Wall Solutions' counterclaims for over payment on pre-September 2008 invoices, request for lost profits as compensation for breach of an exclusivity provision and violation of South Carolina Unfair Trade Practices Act. For the reasons below, Total Wall's motion will be granted.

UNDISPUTED FACTS[1]

Plaintiff Total Wall, Inc. is a Nevada corporation with its principal place of business

---

[1] The following facts, taken from the parties' proposed findings of fact, are material and undisputed for purposes of summary judgment.

in Rio, Wisconsin. Total Wall manufactures and supplies stucco wall cladding systems for use in commercial and residential applications. Total Wall sells its products through distributors and other re-sellers.

Defendant Wall Solutions Supply, LLC is a South Carolina limited liability company. Wall Solutions' sole members are Ovidiu Filip and Radu Chindris, both of whom are citizens of South Carolina. In January 2004, Total Wall and Wall Solutions entered into an oral distributorship agreement in which Wall Solutions agreed to serve as a distributor of Total Wall's products in southeastern South Carolina.

Total Wall negotiated the distributor agreement from its headquarters in Wisconsin. Wall Solutions placed, and Total Wall accepted and processed product orders in Wisconsin. Total Wall manufactured, assembled in and shipped from Wisconsin all products to Wall Solutions in South Carolina.

Prior to September 12, 2008, Wall Solutions paid the amounts due to Total Wall on all invoices without objecting or challenging the amounts due. Beginning with an invoice issued on September 12, 2008, Wall Solutions failed to pay the balance due to Total Wall on 13 invoices. In total, Wall Solutions has failed to pay Total Wall $196,638.20. On May 29, 2009, Total Wall sold over $19,000 worth of products to Sherwin Williams for resale. Sherwin Williams is is located in Beaufort, South Carolina.

OPINION

A.   **Violation of South Carolina Unfair Trade Practices Act**

2

Wall Solutions counterclaims that Total Wall violated South Carolina's Unfair Trade Practices Act by failing to provide promised credits and reimbursements. As an initial matter, Wall Solutions fails to explain why this South Carolina statute applies to the parties' business relationship otherwise governed by Wisconsin law.

Even more fundamental, however, in diversity suits the substantive law of the forum state applies to substantive issues, which would make Wisconsin law the default substantive law of this case. *Van Diest Supply Co. v. Shelby County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005) (citation omitted). As reflected in the undisputed facts summarized above, Wall Solutions identifies no conduct by Total Wall within the State of South Carolina justifying application of the Act here. The fact that Wall Solutions does not dispute that Wisconsin law applies to the claims in this case, generally lends an additional reason not to extend the Act's reach to Total Wall's conduct here.[2] *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002) (in absence of dispute over choice of law, the court will apply the law of forum state).

Wall Solutions has failed to provide any facts from which a reasonable jury could find that Total Wall violated the Act. Under South Carolina law, "a deliberate or intentional breach of a valid contract, without more, does not constitute a violation of the Unfair Trade Practices Act." *Columbia E. Assoc. v. Bi-Lo, Inc.*, 299 S.C. 515, 522, 386 S.E.2d 259, 263 (S.C. Ct. App. 1989); *see also Perry v. Green*, 313 S.C. 250, 257, 437 S.E.2d 150, 154 (S.C.

---

[2] Total Wall asserts that the parties' disputes are governed by Wisconsin law. Pl.'s Br., dkt. #19, at 11. Wall Solutions agrees that Wisconsin law governs the parties' disputes related to their oral distribution contract. Def.'s Opp'n Br., dkt. #25, at 3 n.1.

Ct. App. 1993). Here, it is undisputed that the parties entered into an oral distribution agreement. Any credits or reimbursements Total Wall allegedly promised arose out of that same distribution agreement between the parties. Assuming that Total Wall intentionally breached the agreement by denying earned credits or reimbursements -- which would be a generous assumption given the facts of record -- that still does not violate the Act. Accordingly, Total Wall is entitled to summary judgment on Wall Solutions' South Carolina Unfair Trade Practices Act claim.

B.  **Breach of Contract**

Total Wall seeks summary judgment in two respects on Wall Solutions' breach of contract claim: (1) the voluntary payment doctrine bars Wall Solutions' breach of contract claim with respect to any invoices it paid; and (2) Wall Solutions' claim that Total Wall breached the exclusivity provision of their agreement fails because there is an absence of proof of damages. "[A] motion for summary judgment requires the responding party to come forward with the evidence that it has–it is the put up or shut up moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009) (internal quotations omitted). Wall Solutions, however, has failed to "put up" the evidence necessary to defeat's Total Wall's motion.

As the counterclaim-plaintiff and the responding party, it is Wall Solutions' burden to provide "'sufficient evidence to show the existence of each element of [its] case on which [it] will bear the burden at trial.'" *Van Diest Supply Co. v. Shelby County State Bank*, 425 F.3d

4

437, 439 (7th Cir. 2005) (quoting *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000)). "'[N]either presenting a scintilla of evidence, . . . nor the mere existence of some alleged factual dispute between the parties or some metaphysical doubt as to the material facts, is sufficient to oppose a motion for summary judgment . . . . The party must supply evidence sufficient to allow a jury to render a verdict in his favor.'" *Van Diest Supply Co.*, 425 F.3d at 439 (alterations in original) (quoting *Robin*, 200 F.3d at 1088). Wall Solutions has failed to provide such evidence with respect to both aspects of its breach of contract claim challenged by Total Wall.

1.  **Voluntary payment doctrine**

"The voluntary payment doctrine places upon a party who wishes to challenge the validity or legality of a bill for payment the obligation to make the challenge either before voluntarily making payment, or at the time of voluntarily making payment." *Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship*, 2002 WI 108, ¶13, 255 Wis. 2d 447, 457, 649 N.W.2d 626, 631.[3] The doctrine is premised on the general principle that "a person who receives payment from another without any protest from the payor should be allowed to rely on use of the funds without risking a subsequent demand for return of payment." *Id.* at ¶30, 255 Wis. 2d at 466, 649 N.W.2d at 635. "[A]ll a payor has to do to sidestep the voluntary

---

[3] The Wisconsin courts have recognized fraud, duress and mistake of fact as exceptions to the voluntary payment doctrine. *Putnam*, at ¶29, 255 Wis. 2d at 465, 649 N.W.2d at 635. Wall Solutions has not argued that any of those doctrines apply in this case.

payment doctrine is to make some form of protest over the fee prior to, or contemporaneous with, payment." *Id.* at ¶33, 255 Wis. 2d at 467, 649 N.W.2d at 636.

Wall Solutions does not dispute that it paid in full the amounts Total Wall billed it prior to September 12, 2008. Instead, Wall Solutions claims to have objected to and challenged the amounts due before payment. In support, Wall Solutions cites only the affidavit of its co-owner Radu Chindri, averring generally that "Wall Solutions paid outstanding invoices to Total Wall but lodged complaints prior to or contemporaneously with payment." Chindris Aff., dkt. #27 ¶10. This conclusory statement -- offering no *evidence* of specific, timely protests to *any* individual invoice, either orally or in writing -- is simply not sufficient to establish a genuine issue for trial. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). If it were enough to meet a non-movant's burden, then the voluntary payment doctrine would have little, if any, teeth.

Chindris does avers to having conversations with Total Wall's technical director about being reimbursed or credited for expenses Wall Solutions incurred in promoting Total Wall's products. Chindris Aff., dkt. #27 ¶9. Requesting reimbursements or credits for expenses does not establish that Wall Solutions *ever* protested or objected to the invoices it received and paid. Even assuming that those conversations could be considered a form of protest, Chindris' statements are void of any evidence regarding when any of those conversations took place, much less whether and to what invoices such a general protest applied.

6

Whatever merit there may be in Wall Solutions' claim for breach of the distributor agreement due to Total Wall's failure to provide reimbursements or credits allegedly owed, it may not boot strap that claim to challenge the validity of past invoices timely paid without protest.

Wall Solutions cannot avoid summary judgment by relying on conclusions, speculation and conjecture. *Harrington v. New England Mut. Life Ins. Co.*, 873 F.2d 166, 169 (7th Cir. 1989). In the end, Wall Solutions has failed to provide sufficient evidence from which a reasonable jury could find that the voluntary payment doctrine does not apply. Because Wall Solutions failed to carry its burden on summary judgment, the voluntary payment doctrine precludes Wall Solutions from recovering money on past invoices paid.

### 2. Recovery of lost profits

The parties agree that to recover lost profits on a breach of contract claim the party bringing the claim must prove damages for lost profits with "reasonable certainty." Pl.'s Br., dkt. #19, at 7; Def.'s Opp'n Br., dkt. #25, at 4. In its initial brief, one challenge Total Wall raised with respect to the certainty of Wall Solutions' lost profits claim was the sufficiency of Wall Solutions' expert. Pl.'s Br., dkt. #19, at 8-9. In its opposition brief, Wall Solutions advised that it is not relying on its expert, Christopher M. Linkimer, to prove lost profits.[4]

---

[4] Total Wall's expert actually opined that lost profits were a proper measure of damages in this case. That "opinion" addresses an issue of law left to the court, making the expert opinion less than helpful. *See Magestro v. N. Star Env't Const.*, 2002 WI App 182, ¶10, 256 Wis. 2d 744, 751, 649 N.W.2d 722, 725 (determination of the proper measure of damages is a question of law). In any event, the expert offers no opinion regarding alleged

Def.'s Opp'n Br., dkt. #25, at 5.  That issue, therefore, is a non-starter.

Expert witnesses or no, the proper standard for proving damages for lost profits requires that the claimant produce "evidence of the business's revenue as well as its expenses." *Mrozek v. Intra Fin. Corp.*, 2005 WI 73, ¶38, 281 Wis. 2d 448, 476, 699 N.W.2d 54, 68 (quoting *Lindevig v. Dairy Equip. Co.*, 150 Wis. 2d 731, 740, 442 N.W.2d 504 (Ct. App. 1989)).  Further, "[a]ssertions as to the amount of lost profits have no evidentiary value unless supported by *figures* showing profits and losses." *Id.* (emphasis added).  Wall Solutions has failed to provide sufficient evidence of its revenue or expenses, let alone any figures permitting a reasonable jury to determine likely lost profits from alleged lost sales of Total Wall products.

Wall Solutions instead offers an average gross profit margin, presumably for all products it sells and argues that it "*will* prove its business revenue and expenses through the testimony of Mr. Chindris, as well as through Wall Solutions['] own business records." Def.'s Opp'n Br., dkt. #25, at 6 (emphasis added).  As already noted, however, Wall Solutions has the burden to come forward at summary judgment with specific facts to prove its damages. *Eberts*, 569 F.3d at 767.  Merely stating that it has records to provide such proof at a later date and providing no more than an average gross profit percentage is not sufficient to withstand Total Wall's summary judgment motion. Wall Solutions would have needed to at least provide its average mark-up, if not marginal profit, on the products at issue to begin to arrive at a loss profit amount for any products sold by another distributor.

---

lost profits suffered.  Smigelski Decl., dkt. #21, ex. B.

Even if a general gross profit margin figure were enough to get past summary judgment, Wall Solutions offers no evidence from which a jury could find that it lost even a *single* sale. All that Wall Solutions has shown is that Total Wall sold about $19,000 in products to a Sherwin Williams store in South Carolina. There is no evidence that any of those products were resold, much less resold in the region over which Wall Solutions now claims to have exclusive distribution rights, much less to any customers Wall Solutions had even a remote chance of selling products. A jury could only speculate about Wall Solutions' lost sales and profits and, as previously stated, speculation and conjecture cannot defeat Total Wall's summary judgment motion. *Harrington*, 873 F.2d at 169.

### ORDER

IT IS ORDERED that plaintiff Total Wall, Inc.'s motion for partial summary judgment (dkt. #14) is GRANTED.

Entered this 23rd day of June, 2010.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge